Lionel C. CARSON, Infant, By His Next Friend, Martin A. Carson et al., Petitioners,

v.

Honorable Wilson WARLICK, United States District Judge for the Western District of North Carolina, Respondent.

No. 7281.

United States Court of Appeals Fourth Circuit.

Argued Oct. 1, 1956.

Decided Nov. 14, 1956.

Samuel S. Mitchell, Raleigh, N. C. (Herman L. Taylor, and Taylor & Mitchell, Raleigh, N. C., on brief), for petitioners.

Roy W. Davis, Marion, N. C., for respondent.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and BRYAN, District Judge.

PARKER, Chief Judge.

This is an application for a writ of mandamus in the case wherein Negro children of Old Fort in McDowell County, North Carolina, allege that the Board of Education of that county is exercising discrimination on the grounds of race in refusing to admit them to schools maintained in the town of Old Fort. When the case was before us on appeal, we held that the court below erred in dismissing the case as moot, but ruled that, in further proceedings therein, the court below should give consideration to whether administrative remedies provided by the North Carolina statute of March 30, 1955,* had been exhausted. Carson v. Board of Education of McDowell County, 4 Cir., 227 F.2d 789. After our decision,

---

* See General Statutes of North Carolina as follows:

Sec. 115–176. "County and city boards authorized to provide for enrollment of pupils.—The county and city boards of education are hereby authorized and directed to provide for the enrollment in a public school within their respective administrative units of each child residing within such administrative unit qualified under the laws of this State for admission to a public school and applying for enrollment in or admission to a public school in such administrative unit. Except as otherwise provided in this article, the authority of each such board of education in the matter of the enrollment of pupils in the public schools within such administrative unit shall be full and complete, and its decision as to the enrollment of any pupil in any such school shall be final. No pupil shall be enrolled in, admitted to, or entitled or permitted to attend any public school in such administrative unit other than the public school in which such child may be enrolled pursuant to the rules, regulations and decisions of such board of education. (1955, c. 366, s. 1.)"

Sec. 115–177. "Authority to be exercised for efficient administration of schools, etc.; rules and regulations.—In the exercise of the authority conferred by § 115–176 upon the county or city boards of education, each such board shall provide for the enrollment of pupils in the respective public schools located within such county or city administrative unit so as to provide for the orderly and efficient administration of such public schools, the effective instruction of the pupils therein enrolled, and the health, safety, and general welfare of such pupils. In the exercise of such authority such board may adopt such reasonable rules and regulations as in the opinion of the board shall best accomplish such purposes. (1955, c. 366, s. 2.)"

Sec. 115–178. "Hearing before board upon denial of application for enrollment.—The parent or guardian of any child, or the person standing in loco parentis to any child, who shall apply to the appropriate public school official for the enrollment of any such child in or the admission of such child to any public school within the county or city administrative unit in which such child resides, and whose application for such enrollment or admission shall be denied, may, pursuant to rules and regulations established by the county or city board of education apply to such board for enrollment in or admission to such school, and shall be entitled to a prompt and fair hearing by such board in accordance with the rules and regulations established by such board. The majority of such board shall be a quorum for the purpose of holding such hearing and passing upon such application, and the decision of the majority of the members present at such hearing shall be the decision of the board. If, at such hearing, the board shall find that such child is entitled to be enrolled in such school, or if the board shall find that the enrollment of such child in such school will be for the best interests of such child, and will not interfere with the proper administration of such school, or with the proper instruction of the pupils there enrolled, and will not endanger the health or safety of the children there enrolled, the board shall direct that such child be enrolled in and admitted to such school. (1955, c. 366, s. 3.)"

Sec. 115–179. "Appeal from decision of board.—Any person aggrieved by the final order of the county or city board of education may at any time within ten (10) days from the date of such order

the Supreme Court of North Carolina, in an action to which two of the applicants here were parties, rendered a decision on May 23, 1956, construing the act of March 30, 1955, Joyner v. McDowell County Board of Education, 244 N.C. 164, 92 S.E.2d 795, 798, in which it said:

"With respect to the provisions of G.S. § 115–178, this Court construes them to authorize the parent to apply to the appropriate public school official for the enrollment of his child or children by name in any public school within the county or city administrative unit in which such child or children reside. But such parent is not authorized to apply for admission of any child or children other than his own unless he is the guardian of such child or children or stands in loco parentis to such child or children. In the event a parent, guardian or one standing in loco parentis of several children should apply for their admission to a particular school, it is quite possible that by reason of the difference in the ages of the children, the grades previously completed, the teacher load in the grades involved, etc., the school official might admit one or more of the children, and reject the others. The factors involved necessitate the consideration of the application of any child or children individually and not en masse. Any interested parent, guardian or person standing in loco parentis to such child or children, whose application may be rejected, may appeal to the appropriate board for a hearing in accordance with the rules and regulations established by such board. Furthermore, if the board denies the application for admission of such child or children, the aggrieved party may appeal in the manner prescribed by statute, G.S. § 115–179, to the superior court, where the matter shall be heard de novo before a jury in the same manner as civil actions are tried therein.

"Therefore, this Court holds that an appeal to the superior court from the denial of an application made by any parent, guardian or person standing in loco parentis to any child or children for the admission of such child or children to a particular school, must be prosecuted in behalf of the child or children by the interested parent, guardian or person standing in loco parentis to such child or children respectively and not collectively.

\* \* \* \* \* \*

"An additional reason why this proceeding was properly dismissed is that while it purports to have been brought pursuant to the provisions of our school enrollment statutes, it is not based on an application for assignment relating to named individuals as contemplated by the enrollment statutes, but is in reality a class suit. It is in effect an application for mandamus, requiring the immediate integration of all Negro pupils residing in the administrative unit in which the Old Fort school is

appeal therefrom to the superior court of the county in which such administrative school unit or some part thereof is located. Upon such appeal, the matter shall be heard de novo in the superior court before a jury in the same manner as civil actions are tried and disposed of therein. The record on appeal to the superior court shall consist of a true copy of the application and decision of the board, duly certified by the secretary of such board. If the decision of the court be that the order of the county or city board of education shall be set aside, then the court shall enter its order so providing and adjudging that such child is entitled to attend the school as claimed by the appellant, or such other school as the court may find such child is entitled to attend, and in such case such child shall be admitted to such school by the county or city board of education concerned. From the judgment of the superior court an appeal may be taken by any interested party or by the board to the Supreme Court in the same manner as other appeals are taken from judgments of such court in civil actions."

located, in the Old Fort school. Such a procedure is neither contemplated nor authorized by statute. Therefore, the appeal is dismissed."

The applicants did not attempt to comply with the provisions of the statute as so interpreted by the Supreme Court of North Carolina, but on July 11, 1956, counsel who are representing them before this court wrote a letter to the secretary of the Board of Education, inquiring what steps were being taken for the admission of Negro children to the Old Fort school. The secretary replied that "inasmuch as no Negro pupil has made application, nor has any parent or person standing in loco parentis made application for any Negro child to attend school in the town of Old Fort for the school year 1956–57, the Board had had no cause to take any action in this connection."

Upon receiving this reply, applicants here, plaintiffs in the court below, on the 12th day of July 1956 moved in the action there pending to file a supplemental complaint in which, without alleging compliance with the requirements of the North Carolina statute as interpreted by the Supreme Court, they asked a declaratory judgment and injunctive relief with respect to their right to attend the Old Fort school. The District Judge denied the motion on the ground that plaintiffs had not exhausted their administrative remedies and stayed proceedings in the cause until same should be exhausted, but stated that, as soon as it was made to appear that they had been exhausted, he would grant such relief as might be appropriate in the premises, saying:

"(1) That obedient to the per curiam decision of the Court of Appeals for the Fourth Circuit, 227 F.2d 789, this Court has up until this time and will consistently hereafter consider this case in the light of the decision of the Supreme Court of the United States in the so-called School Segregation Case, and of the North Carolina statute chapter 366, Laws 1955, G.S. 115–176 to 176–179, set out in the opinion in the 227 F.2d 789, and has consistently asserted and now reaffirms that it is the duty under the authority granted to stay all proceedings herein and to cause the matter to remain continuously at issue on the docket until it should be made to appear that the plaintiffs herein or some of them have exhausted the administrative remedies which are provided for them or some of them or any of them under the above statute, and that when such is made to appear the Court will immediately entertain a motion by counsel for the plaintiffs or some of them or any of them to file amendment to the complaint or to replead, indicating that the rights to which they are entitled have been denied them on account of their race or color, and immediately thereafter, and within twenty days, will require an answer to be filed thereto and will set the case down with a peremptory setting as the first cause to be disposed of, either at the regular term or some other called term of this court, dependent upon the requests of the parties or those who appear for them as counsel in said cause."

Upon the denial of the motion, application for writ of mandamus was filed here to require the District Judge to vacate the order staying proceedings, to allow the supplemental pleading to be filed and to proceed with the cause "as though the Pupil Enrollment Act had never been enacted".

■ We think it clear that applicants are not entitled to the writ of mandamus which they ask, for the reason that it nowhere appears that they have exhausted their administrative remedies under the North Carolina Pupil Enrollment Act, and are not entitled to the relief which they seek in the court below until these administrative remedies have been exhausted. See 227 F.2d at page 790. In the supplemental complaint which they proposed to file in the court below they did, indeed, allege that on August 24, 1955, they had presented their children at the Old Fort school for admission, that they were denied admission on the

ground of race and that on August 27 they and certain other Negroes had filed a joint petition with the school board asking that their children be admitted to the school. This petition was denied by the Board in January 1956 and it was an appeal from this order of the Board to the Superior Court and thence to the Supreme Court of the State in which the decision of the Supreme Court of May 23, 1956 was rendered. While the presentation of the children at the Old Fort school appears to have been sufficient as the first step in the administrative procedure provided by statute, the prosecution of a joint or class proceeding before the school board was not sufficient under the North Carolina statute as the Supreme Court of North Carolina pointed out in its opinion; and not until the administrative procedure before the board had been followed in accordance with the interpretation placed upon the statute by that court would applicants be in position to say that administrative remedies had been exhausted.

■ It is argued that the Pupil Enrollment Act is unconstitutional; but we cannot hold that that statute is unconstitutional upon its face and the question as to whether it has been unconstitutionally applied is not before us, as the administrative remedy which it provides has not been invoked. It is argued that it is unconstitutional on its face in that it vests discretion in an administrative body without prescribing adequate standards for the exercise of the discretion. The standards are set forth in the second section of that act, G.S. § 115–177, and require the enrollment to be made "so as to provide for the orderly and efficient administration of such public schools, the effective instruction of the pupils therein enrolled, and the health, safety, and general welfare of such pupils". Surely the standards thus prescribed are not on their face insufficient to sustain the exercise of the administrative power conferred. As said in Opp Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor, 312 U.S. 126, 145, 657, 61 S.Ct. 524, 533, 85 L.Ed. 624: "The essentials of the legislative function are the determination of the legislative policy and its formulation as a rule of conduct. Those essentials are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective." The authority given the boards "is of a fact-finding and administrative nature, and hence is lawfully conferred." Sproles v. Binford, 286 U.S. 374, 397, 52 S.Ct. 581, 588, 76 L.Ed. 1167. See also Douglas v. Noble, 261 U.S. 165, 169–170, 43 S.Ct. 303, 67 L.Ed. 590; Hall v. Geiger-Jones Co., 242 U.S. 539, 553–554, 37 S.Ct. 217, 61 L.Ed. 480; Mutual Film Corp. of Missouri v. Hodges, 236 U.S. 248, 35 S.Ct. 393, 59 L.Ed. 561; Mutual Film Corp. v. Industrial Commission of Ohio, 236 U.S. 230, 245–246, 35 S.Ct. 387, 59 L.Ed. 552; Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, 222 U.S. 380, 394, 32 S. Ct. 152, 56 L.Ed. 240.

■ Somebody must enroll the pupils in the schools. They cannot enroll themselves; and we can think of no one better qualified to undertake the task than the officials of the schools and the school boards having the schools in charge. It is to be presumed that these will obey the law, observe the standards prescribed by the legislature, and avoid the discrimination on account of race which the Constitution forbids. Not until they have been applied to and have failed to give relief should the courts be asked to interfere in school administration. As said by the Supreme Court in Brown v. Board of Education, 349 U.S. 294, 299, 75 S.Ct. 753, 756, 99 L.Ed. 1083:

■ "School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles".

■ It is argued that the statute does not provide an adequate administrative

remedy because it is said that it provides for appeals to the Superior and Supreme Courts of the State and that these will consume so much time that the proceedings for admission to a school term will become moot before they can be completed. It is clear, however, that the appeals to the courts which the statute provides are judicial, not administrative remedies and that, after administrative remedies before the school boards have been exhausted, judicial remedies for denial of constitutional rights may be pursued at once in the federal courts without pursuing state court remedies. Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281. Furthermore, if administrative remedies before a school board have been exhausted, relief may be sought in the federal courts on the basis laid therefor by application to the board, notwithstanding time that may have elapsed while such application was pending. Applicants here are not entitled to relief because of failure to exhaust what are unquestionably administrative remedies before the board.

■ There is no question as to the right of these school children to be admitted to the schools of North Carolina without discrimination on the ground of race. They are admitted, however, as individuals, not as a class or group; and it is as individuals that their rights under the Constitution are asserted. Henderson v. United States, 339 U.S. 816, 824, 70 S.Ct. 843, 94 L.Ed. 1302. It is the state school authorities who must pass in the first instance on their right to be admitted to any particular school and the Supreme Court of North Carolina has ruled that in the performance of this duty the school board must pass upon individual applications made individually to the board. The federal courts should not condone dilatory tactics or evasion on the part of state officials in according to citizens of the United States their rights under the Constitution, whether with respect to school attendance or any other matter; but it is for the state to prescribe the administrative procedure to be followed so long

as this does not violate constitutional requirements, and we see no such violation in the procedure here required. We are dealing here, of course, with the administrative procedure of the state and not with the right of persons who have exhausted administrative remedies to maintain class actions in the federal courts in behalf of themselves and others qualified to maintain such actions.

Mandamus denied.