Joycelyn McKISSICK, by her mother and next friend, Evelyn W. McKissick, and Elaine Richardson, by her mother and next friend, Rachel Richardson, on behalf of themselves and others similarly situated, Plaintiffs,

v.

DURHAM CITY BOARD OF EDUCATION, a body politic of Durham County, North Carolina, and Luther E. Barnhardt, Edwin Gill, Charles F. Carroll, J. A. Pritchett, William D. Herring, Charles E. Jordan, Charles G. Rose, C. W. McCrary, O. L. Richardson, B. Barton Hayes, Gerald Cowan, Guy B. Phillips and H. L. Trigg, Members of the North Carolina State Board of Education, a body politic of the State of North Carolina, Defendants.

No. C–100–D–58.

United States District Court M. D. North Carolina, Durham Division.

Sept. 4, 1959.

C. O. Pearson, M. Hugh Thompson, **F. B. McKissick**, William A. Marsh, Jr., and J. H. Wheeler, Durham, N. C., for plaintiffs.

Marshall T. Spears, Durham, N. C., for defendant, Durham City Board of Education.

Malcolm B. Seawell, Atty. Gen. of the State of North Carolina, and Ralph Moody, Asst. Atty. Gen. of the State of North Carolina, for defendant, North Carolina Board of Education.

STANLEY, District Judge.

This class action was commenced on May 12, 1958, by Joycelyn McKissick, a 15-year-old Negro citizen of Durham, North Carolina, through her mother and next friend, Evelyn W. McKissick, and Elaine Richardson, a 13-year-old Negro citizen of Durham, North Carolina, through her mother and next friend, Rachel Richardson, against the Durham City Board of Education and the North Carolina State Board of Education, to have declared the rights of the minor plaintiffs and the class of persons they represent to attend the public schools of the City of Durham without discrimination on account of race or color, and for injunctive relief.

Briefly stated, the complaint alleges that the plaintiffs are citizens and residents of the City of Durham, North Carolina, and that the minor plaintiffs are eligible to attend the public schools of that city; that the action is brought on behalf of the plaintiffs and all others similarly situated, pursuant to Rule 23 (a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; that the public schools in the City of Durham are operated by the Durham City Board of Education under the general supervision and control of the North Carolina State Board of Education; that the Durham City Board of Education maintains and generally supervises certain schools for the education of white children exclusively and other schools for the education of Negro children exclusively; that all of said schools are being maintained and operated pursuant to the State Consti-

tution, State statutes, State administrative orders and legislative policy requiring racial segregation in the public schools, which operation is repugnant to the Fourteenth Amendment to the Constitution of the United States; that on several occasions plaintiffs filed with the defendant, Durham City Board of Education, petitions and objections to further operation of the City schools on a racially segregated basis; that the defendant, Durham City Board of Education, has adopted a policy of delaying the assignment of pupils until the latter part of August of each year, thereby making it difficult, if not impossible, for the plaintiffs and those similarly situated, to exercise their administrative remedies until after the opening of school; that on or about the 23rd day of August, 1957, the plaintiffs petitioned the Durham City Board of Education for reassignment to a school they were qualified to enter, which request was refused; that on or about the 1st day of September, 1957, the plaintiffs petitioned the Durham City Board of Education for rehearing on their request for reassignment, and that after the rehearing the request was again refused; and that on or about the 15th day of October, 1957, the plaintiffs appealed to Mr. Charles F. Carroll, Superintendent of Public Instruction for the State of North Carolina, to advise the Durham City Board of Education to cease and desist from operating the public schools of the City of Durham on a racial basis, which request was refused. The plaintiffs pray (1) that a three-judge court be convened, (2) that a preliminary injunction be entered restraining the defendants from enforcing certain provisions of the State Constitution, State Statutes, and administrative orders of defendants which require or permit or result in racial segregation of the plaintiffs and other members of the class of persons which they represent, (3) that the legal rights of plaintiffs and the class of persons they represent be declared, and (4) that the court order defendants to promptly present a plan of desegregation to the court which will expeditiously desegregate the schools operated by the Durham City Board of Education.

The defendants filed answers setting up a number of specific defenses, including the failure of the plaintiffs to exhaust their administrative remedies under the North Carolina Pupil Assignment Act. N.C.G.S. § 115–176 et seq. The defendants further denied the necessity for convening a three-judge court for the reason that the segregation of pupils in public schools because of race and color has been declared to be unconstitutional by numerous court decisions, including the Supreme Court of the United States and the Supreme Court of North Carolina, and that the plaintiffs were merely asking for a restatement of legal principles that have been stated and restated on numerous occasions.

After granting the requested time for completion of discovery, the case came on for trial before the court without a jury on March 31, 1959. At the conclusion of the trial, the court, by agreement of counsel, gave the parties a specified time to file, after being furnished with a transcript of the evidence, proposed findings of fact, conclusions of law and briefs.

The requests for findings of fact, conclusions of law and briefs of the parties having been received, the court, after considering the pleadings and the evidence, including answers to interrogatories and stipulations filed, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1. The minor plaintiff, Joycelyn McKissick, is a member of the Negro race, 15 years of age, a citizen and resident of the City of Durham, and brings this action through her duly appointed next friend, Evelyn W. McKissick. The minor plaintiff, Elaine Richardson, is a member of the Negro race, 13 years of age, a citizen and resident of the City of Durham, and brings this action through her duly appointed next friend, Rachel Richard-

son. This action was duly and properly instituted in this court, summons was duly served, and the parties are properly before the court.

2. The defendant, Durham City Board of Education, exercises such powers and duties as are conferred upon it by Chapter 115 of the General Statutes of North Carolina, and operates in the City of Durham seventeen elementary schools, four junior high schools, namely, Carr Junior High School, E. K. Powe Junior High School, East Durham Junior High School, and Whitted Junior High School, and two senior high schools, namely, Durham High School and Hillside High School. During the 1957–1958 school year, Carr Junior High School, E. K. Powe Junior High School, and East Durham Junior High School were attended exclusively by white pupils, and Whitted Junior High School was attend exclusively by Negro pupils. During the same school year, Durham High School was attended exclusively by white pupils and the Hillside High School was attended exclusively by Negro pupils.

3. On October 12, 1956, a petition on behalf of approximately 740 citizens of the City of Durham was presented to the Durham City Board of Education requesting said board to prepare a plan for desegregating the City schools. By letter dated November 15, 1956, the board replied to Mr. C. O. Pearson, one of the attorneys presenting the petition, as follows:

"Your communication of October 12, 1956, signed by you and others, was submitted to the Board of Education of the City of Durham at its regular meeting held November 12, 1956. Please be informed that a Special Committee of the Board has been carefully considering and is continuing the study of the decision in the case of Brown vs. Board of Education of Topeka, Kansas [349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083], as it affects or may affect the public schools in the City of Durham. The Committee is experiencing difficulty in formulating a rec-ommendation which will meet with sufficient public support to insure continued operation of our local public schools. Therefore, the Committee feels that it should have additional time for further study.

"We are, of course, operating the local city schools under the statutes governing the admission of pupils in the public schools of this State and in accordance with our earnest desire to provide the best possible educational opportunity for all the children of our City."

4. On July 22, 1957, Mrs. F. B. McKissick, mother of Joycelyn McKissick, and Rachel Richardson, mother of Elaine Richardson, wrote letters to the Durham City Board of Education requesting that their children, including the minor plaintiffs, not be reassigned to a "segregated school system" for the ensuing year. Objection was made to the practice of the school board in making assignments such a short time prior to the opening of the school. The record does not disclose what action, if any, was taken on these letters.

5. For the school year 1956–1957, the plaintiff, Joycelyn McKissick, was assigned to and attended Whitted Junior High School, and the plaintiff, Elaine Richardson, was assigned to and attended Walltown Elementary School.

6. At a meeting held on August 12, 1957, the Durham City Board of Education adopted a resolution providing that each child then attending a school by assignment from the board be assigned to the same school for the 1957–1958 school year; provided, that those children having satisfactorily completed the course of instruction of any public school within the administrative unit were to be assigned to the next succeeding grade in the school which served the graduates of the school from which they had graduated. Notice of the assignment was given by publication of said resolution in the Durham Morning Herald, a daily newspaper published in the City of Durham, North Carolina, on August 14 and 21st, 1957.

7. Pupils in the Durham City School System were assigned to schools for the school year 1957–1958 on the basis of two sets of city maps, one zoned exclusively for white pupils and one zoned exclusively for Negro pupils.

8. Pursuant to the assignments made by the resolution of the Durham City Board of Education on August 12, 1957, Joycelyn McKissick, one of the plaintiffs in this action, was assigned to Hillside High School and was duly enrolled in and attended said school for the school year 1957–1958. Elaine Richardson, one of the plaintiffs in this action, was assigned to Whitted Junior High School and was duly enrolled and attended said school for the school year 1957–1958.

9. On August 25, 1957, Mr. and Mrs. F. B. McKissick, parents of Joycelyn McKissick, made application to the Durham City Board of Education for a change of pupil assignment for their daughter, Joycelyn McKissick. The application was on a form supplied by the Durham City Board of Education and gave the following answers to certain questions appearing on the application:

"10. School to which child has been assigned by the Board:
"Hillside High School.

"11. School and grade to which assignment is requested.
"to be reassigned to high school nearest residence.

\*　\*　\*　\*　\*　\*

"13. State specific reasons why child should not attend school to which child has been assigned: (If more space necessary, attach additional sheet.)
"to attend school on a non-segregated basis.

"14. State specific reasons why child should be assigned to school named by you in Paragraph 11 above: (If more space necessary, attach additional sheet.)
"1. Child will have to leave home in the morning in order to catch a bus, transfer to another bus and get to school by 8:30.
"Too much time is consumed in transporting child across town to school, making a hardship on mother in that other younger children have to be cared for."

The application for pupil assignment was received by the principal of Hillside High School on August 28, 1957. Thereafter it was delivered to Mr. Lew W. Hannen, Acting Superintendent of the Durham City Schools.

10. On August 23, 1957, Mrs. Rachel Richardson, mother of Elaine Richardson, made application to the Durham City Board of Education for a change of pupil assignment for her daughter, Elaine Richardson. The application was made on a form supplied by the Durham City Board of Education and gave the following answers to certain questions appearing on the application:

"10. School to which child has been assigned by the Board:
"Whitted.

"11. School and grade to which assignment is requested:
"To a public school nearest this pupil on a non segregated basis.

\*　\*　\*　\*

"13. State specific reasons why child should not attend school to which child has been assigned: (If more space necessary, attach additional sheet.)
"The Board of Education of the City of Durham prior to 1954 and since, has made its assignments of pupils including this applicant, on a racial basis. This assignment is

harmful to the child psychologically, and makes the child feel that the state is working against it and it will not have an opportunity to develop into full citizenship, in the community.

"14. State specific reasons why child should be assigned to the school named by you in Paragraph 11 above: (If more space necessary, attach additional sheet.)

"The Supreme Court of the United States has stated in the Brown case that there can be no segregation in public education. However, since its decision this Board has operated and continues to operate in direct conflict with the law. And by its acts is breeding contempt for the law by those who profess to teach respect for the law the students entrusted in their care."

The application for pupil assignment was received by the principal of Whitted Junior High School on August 27, 1957. Thereafter, it was delivered to Mr. Lew W. Hannen, Acting Superintendent of the Durham City Schools.

11. The plaintiff, Joycelyn McKissick, resides at 1123 Roxboro Street in the City of Durham, which is a distance of less than 1½ miles from Durham High School and a distance of more than 2½ miles from Hillside High School.

12. In the application for change of pupil assignment submitted on behalf of Elaine Richardson, her residence is stated as 1202 Fourth Street, presumably in the City of Durham. No evidence appears in the record, nor was any evidence offered at the trial or otherwise, as to the distance from this plaintiff's residence to any of the schools in the Durham school system, or as to where she was residing at the time of the trial.

13. The Durham City Board of Education met in special session on Tuesday, September 3, 1957, at 7:30 o'clock p. m., and considered applications for the reassignment of pupils, including the application of the parents of Joycelyn McKissick and the application of the mother of Elaine Richardson. At this special session neither the parents of Joycelyn McKissick, nor the mother of Elaine Richardson, nor Joycelyn McKissick or Elaine Richardson, nor anyone for or on their behalf, appeared before the Board in connection with the applications for change of pupil assignment. After approving the reassignment of several pupils, and denying requests for reassignment of several other pupils, the minutes of the Board of September 3, 1957, show the following:

"The Board discussed fully each of eight applications for change of assignment from Whitted Junior High School 'to a public school nearest to the pupil on a non-segregated basis.' It was pointed out that Carr Jr. High School is already overcrowded in grades seven and eight, and that some previous applications for admission to that school had been denied.

"One application from Joycelyn Daszelle McKissick, Hillside High School 'to high school nearest residence' was discussed. It was brought out that it would be unwise psychologically and otherwise to reassign one applicant from Hillside to attempt adjustment to more than 1200 pupils at Durham High School."

Each of the nine applications mentioned were disapproved by the adoption of the following resolution:

"Be It Resolved By The Board of Education of the City of Durham: That in order to best promote the orderly and efficient administration of the public schools in this administrative unit, the effective instruction of pupils subject to assignment by this Board, and the health, safety and general welfare of such pu-

pils, and each of them, and for the proper utilization of the physical facilities presently available, it is our considered opinion conditions and circumstances are such that any departure from former policies would result in injustice to the children of both races, and, therefore, we decline the request for reassignment made by each of the following:

Carolyn Canion, from Whitted 7th grade

Earnestine Canion, from Whitted 8th grade

Major Junius Johnson, from Whitted 7th grade

Thurman L. Morgan, from Whitted 8th grade

Gearldine Parker, from Whitted 7th grade

William Herbert Parker, from Whitted 8th grade

Francis Elaine Richardson, from Whitted 7th grade

Melvin Greenlee Whitted, Jr., from Whitted 7th grade

Joycelyn Daszelle McKissick, from Hillside 10th grade

"This decision is based on reactions to untried integrated schools in this administrative unit and in our State, general overcrowded conditions that prevail in Carr Junior High School and Durham High School that would necessitate the removal of pupils now properly assigned if the above requests for reassignment were granted. It is also our considered opinion that such a refusal will not develop harmful psychological effects to the children who have requested reassignment, but to grant such requests, or any of them would be harmful psychologically to a great many children of both races. We are further cognizant of the fact that the duty of this Board of Education is to provide educational advantages to all children in as orderly and safe a process as possible."

14. On September 4, 1957, Mr. Lew W. Hannen, Acting Superintendent of the Durham City Schools, wrote a letter to Mr. F. B. McKissick, father of Joycelyn McKissick, advising him that at the special meeting of the Board held on September 3, 1957, the application for change of pupil assignment for his daughter, Joycelyn McKissick, had been denied. On the same date, Mr. Hannen also wrote a letter to Mrs. Rachel Richardson, mother of Elaine Richardson, advising her that at the special session of the Board held on September 3, 1957, the application for change of pupil assignment for her daughter, Elaine Richardson, had been denied.

15. On September 7, 1957, within the time required by law, Messrs. C. O. Pearson, J. H. Wheeler, F. B. McKissick, M. Hugh Thompson and William A. Marsh, Attorneys, wrote the following letter to the Board of Education:

"As representatives of each individual parent and child listed below, we hereby respectfully request on behalf of each of them, a hearing on the rejection by you of each of these individual's request for reassignment. We are making this request for each individual pursuant to the Power of Attorney given each of us by the said individuals.

"These are the names of the parents and children for whom we respectfully request this hearing on behalf of each of them.

(Here was inserted the names of each pupil and parent, including the plaintiffs, Joycelyn McKissick and Elaine Richardson, whose applications for pupil reassignment had been denied by the resolution of the Board on September 3, 1957).

"It is the feeling of these parents that their children live nearer schools than the one to which the children listed above have been assigned. Moreover, these parents feel that the children listed above are entitled to attend the school nearest their home on a nonsegregated basis and are therefore request-

ing this hearing before the School Board for the purpose of objecting to the rejection of their request for reassignment of these children to the school nearest them. We are sure that you realize that time is of the essence in this matter and we are hoping that the hearing will be granted promptly."

There is no evidence in the record that the Power of Attorney referred to was enclosed with the above letter, or that it was ever filed with or delivered to the Board of Education, or any member thereof.

16. On September 9, 1957, Mr. Lew W. Hannen, Acting Superintendent of the Durham City Schools, wrote a letter to Mr. C. O. Pearson, one of the attorneys for plaintiffs, acknowledging receipt of his letter of September 7, 1957, and stating that the board would hold a regular meeting on September 9, 1957, and that a time would be set for a prompt and fair hearing, and that he would be notified of the action.

17. On September 10, 1957, Mr. Hannen wrote Mr. Pearson the following letter:

"This is to notify you that the Board of Education in session September 9, 1957, has granted your request for a hearing regarding the denial of change of assignment for the nine pupils listed in your letter of September 7. The hearing has been set for Tuesday, September 17, at 7:30 p. m. in the School Board Room at Fuller School. We are notifying each of the five Negro principals who signed your letter."

18. At no time did the Durham City Board of Education ever request that the applicants, or anyone on their behalf, appear before the board.

19. On September 17, 1957, between 4:30 and 5:00 o'clock in the afternoon, Mr. William A. Marsh, Jr., one of the attorneys for the plaintiffs, delivered to Mr. Spurgeon S. Boyce, Chairman of the Board of Education, an "appeal" on behalf of Evelyn McKissick, mother of

Joycelyn McKissick, an "appeal" on behalf of Rachel Richardson, mother of Elaine Richardson, and an "appeal" on behalf of the parents of the seven other pupils. Each of the aforementioned "appeals" was in the following form:

"Appeal.

"Now Comes (name of parent), parent of (name of pupil), minor, through her counsel, C. O. Pearson, J. H. Wheeler, F. B. McKissick, M. Hugh Thompson and William A. Marsh, Jr., Attorneys at Law, whose said child was assigned by the Durham City Board of Education to a segregated school system on the basis of race, and hereby lodges an appeal to said Board and respectfully requests that this child be reassigned to the school nearest her on a nonsegregated basis.

"This child lives nearer a high school than the one to which she was assigned, and because of such assignment it creates a hardship on her parent and indeed on said child.

"May we direct your attention to the fact that by the assignment made of this minor to the same racially segregated school solely because of her race does irreparable damage to her personality and hinders her development in that it creates a feeling of inferiority and makes her feel that she cannot fully develop in the community as a first class citizen.

"May we direct your attention further to the fact that the U.S. Supreme Court has ruled that there can no longer be racial discrimination in public school facilities. Therefore, we respectfully request that this Board bring forth a plan to reorganize the school system in compliance with the decision in the cases under the title 'Brown, et al vs. the Board of Education' and assign this child to the school nearest her without regard to race."

20. The Durham City Board of Education met in special session on Tues-

day, September 17, 1957, at 7:30 o'clock p. m., and considered, along with other business, the "appeals" of the parents of Joycelyn McKissick and the mother of Elaine Richardson, and the parents of the seven other pupils, all of whom had "appealed" from the action taken by the Board at the special session held on September 3, 1957. Neither the parents of Joycelyn McKissick, nor the mother of Elaine Richardson, nor the parents of any of the other seven pupils, nor Joycelyn McKissick, nor Elaine Richardson, nor any of the other seven pupils, nor anyone for or on their behalf, appeared before the board in connection with the "appeals" for change of pupil assignment. The action by the board in regard to the "appeals" is noted in the official minutes of the meeting of the board on September 17, 1957, as follows:

"The Secretary read appeals filed by five attorneys for the nine Negro pupils, whose names are listed in minutes of September 3, 1957, seeking admission to Durham High School and Carr Junior High Schools. After some discussion it was decided to study the appeals carefully before giving an answer, and that an answer would be given at an early date, not later than the next regular Board meeting, October 14, 1957."

21. The Durham City Board of Education held a regular meeting on Monday, October 14, 1957, which was 28 days after the commencement of school. Neither the parents of Joycelyn McKissick, nor the mother of Elaine Richardson, nor the parents of the other seven pupils, nor any of the pupils, nor anyone for or on their behalf, appeared at this meeting in connection with the appeals for change of pupil assignment. At the said meeting, the board adopted the following resolution:

"After further careful consideration and investigation, The Board of Education of the City of Durham finds that the circumstances and conditions set forth in its resolution adopted September 3, 1957, have not changed.

"It is the firm belief of the members of the Board that any departure from their original conclusion based, once again, on factual conditions would render an injustice to all the school children involved. Therefore, for the time being the Board declines your appeal for re-assignment presented September 17, 1957."

22. On October 15, 1957, the action taken by the board at its October 14, 1957, meeting was communicated to the plaintiffs by letter from Mr. Lew W. Hannen, Acting Superintendent of Durham City Schools, to Mr. C. O. Pearson, attorney for the plaintiffs.

23. By letter dated October 15, 1957, Mr. C. O. Pearson, counsel for plaintiffs, requested Mr. Charles F. Carroll, Superintendent of Public Instruction for the State of North Carolina, one of the individual defendants herein, to issue an order or directive demanding that the Durham City School Board cease and desist from discriminating against the plaintiffs, and to immediately reorganize the school system in the City of Durham on a non-racial basis. On October 18, 1957, Mr. Charles F. Carroll replied to Mr. Pearson's letter as follows:

"This is to advise you that under the Public School Law of the State of North Carolina (Chapter 115 of the General Statutes, Cumulative Supplement of 1955, as amended by the 1956 Extra and 1957 Regular Session Laws) I have no duty in this matter, and I have no authority relative to the matters contained in * * * your letters * * *."

24. Pursuant to a resolution adopted at a regular meeting held on August 11, 1958, notice of assignment of pupils for the school year 1958–1959 was given by publications in the Durham Morning Herald on August 13 and 20th, 1958. Under said resolution and assignment, the plaintiff, Joycelyn McKissick, was assigned to Hillside High School, and the plaintiff, Elaine Richardson, was as-

signed to Whitted Junior High School. Neither of the minor plaintiffs, nor anyone on their behalf, made application to the Durham City Board of Education for change of pupil assignment for the 1958–1959 school year.

## Discussion

The questions presented by the foregoing facts are (1) whether the plaintiffs are entitled to have a three-judge court convened pursuant to the provisions of Title 28, Sections 2281 and 2284, United States Code, (2) whether the North Carolina State Board of Education, or the individual members thereof, are necessary or proper parties, (3) whether the plaintiffs were required to exhaust their administrative remedies under the North Carolina Assignment and Enrollment of Pupils Act prior to the institution of this suit, (4) whether the plaintiffs have exhausted their administrative remedies under the North Carolina Assignment and Enrollment of Pupils Act, and (5) whether the minor plaintiffs, or either of them, were refused reassignment on account of race or color.

## I.

WHETHER THE PLAINTIFFS ARE ENTITLED TO HAVE A THREE-JUDGE COURT CONVENED PURSUANT TO THE PROVISIONS OF TITLE 28, SECTIONS 2281 AND 2284, UNITED STATES CODE.

While the plaintiffs pray in their complaint that a three-judge court be convened as required by Title 28, Sections 2281 and 2284, United States Code, for the purpose of restraining the enforcement of certain provisions of the Constitution and State Statutes of North Carolina which require or permit or result in racial segregation in public schools, this portion of the prayer for relief was apparently abandoned since it was not urged at any time during the course of the proceeding.

Both defendants in their answers deny the necessity for convening a three-judge court, and both allege, in substance, that the enforcement or execution of any constitutional provision or state statute requiring the segregation of pupils in public schools because of race or color would violate the Fourteenth Amendment to the Constitution of the United States and would be invalid. Neither defendant has defended by virtue of any law requiring the operation of segregated schools, and both contend that the convening of the three-judge court could only result in a restatement of legal principles that have been decided time and again.

This entire subject was exhaustively treated by Judge Hayes in Covington v. Montgomery County School Board, D.C.M.D.N.C.1956, 139 F.Supp. 161, and my views were expressed in Jeffers v. Whitley, D.C.M.D.N.C.1958, 165 F.Supp. 951. Further, the North Carolina Supreme Court, in Constantian v. Anson County, 1956, 244 N.C. 221, 93 S.E.2d 163 acknowledges that the decisions of the Supreme Court of the United States in Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L. Ed. 873, and Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, are authoritative in this jurisdiction, and that " * * * any provision of the Constitution or statutes of North Carolina in conflict therewith must be deemed invalid." [244 N.C. 221, 93 S.E.2d 168.]

It is concluded that there has been a total failure on the part of the plaintiffs to demonstrate that any officer of the State of North Carolina has sought to deprive the plaintiffs, or other members of the class of persons which they represent, of any right by reason of a constitutional provision or statute requiring racial segregation in the public schools of the state, and that there is no necessity for convening a three-judge court.

## II.

WHETHER THE NORTH CAROLINA STATE BOARD OF EDUCATION, OR THE INDIVIDUAL MEMBERS THEREOF, ARE NECESSARY OR PROPER PARTIES.

In passing on this question, the court is called upon to discuss a proposi-

tion that has been presented and ruled upon time and again.

The precise question was decided in the case of Jeffers v. Whitley, D.C.M.D.N.C. 1958, 165 F.Supp. 951, and again in the case of Covington v. Edwards, D.C.M. D.N.C.1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780. In the Jeffers case, this court stated [165 F.Supp. 956]:

> "After an exhaustive search of the public school laws of this state, I fail to find any provision giving the state officials any authority or control whatever over local school officials relating to the enrollment and assignment of pupils in the public schools."

The allegations in the complaint in this action, and the allegations in Covington v. Edwards, supra, as they relate to the North Carolina State Board of Education, are almost identical. It was held in the Covington case that the members of the North Carolina State Board of Education were neither necessary nor proper parties to the action, and this ruling was sustained by the Court of Appeals for the Fourth Circuit. Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780. Indeed, it would appear that the plaintiffs now recognize the correctness of this ruling by their failure to propose any findings or conclusions against the North Carolina State Board of Education, or individual members thereof.

For the reasons stated, it is concluded that complaint against the individual defendants and the North Carolina State Board of Education should be dismissed.

### III.

WHETHER THE PLAINTIFFS WERE RE-QUIRED TO EXHAUST THEIR ADMINIS-TRATIVE REMEDIES UNDER THE NORTH CAROLINA ASSIGNMENT AND ENROLL-MENT OF PUPILS ACT PRIOR TO THE INSTITUTION OF THIS SUIT.

It has been repeatedly held by this court and the Court of Appeals for the Fourth Circuit that the administrative remedies provided under the North Carolina Assignment and Enrollment of Pupils Act must be exhausted before the courts of the United States will grant injunctive relief in suits of this type, and that such rights must be asserted as individuals, not as a class or group. Carson v. Board of Education of McDowell County, 4 Cir., 1955, 227 F.2d 789; Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724, certiorari denied 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664; Covington v. Edwards, D.C.1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780, and Holt v. Raleigh City Board of Education, D.C.E.D.N.C.1958, 164 F.Supp. 853, 863 affirmed 4 Cir., 1959, 265 F.2d 95. Notwithstanding these holdings, the plaintiffs brought this action as a class action pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure, to have declared the rights of the plaintiffs, and the class of persons they represent, to attend desegregated schools, and for injunctive relief.

Again, the allegations in the complaint in this action, including the nature of the relief sought, and the allegations and relief sought in the Covington case are almost identical. Plaintiffs' present argument is completely and effectively answered in Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780, 783, as follows:

> "We are advertent to the circumstances upon which the plaintiffs rest their case, namely, that the County Board has taken no steps to put an end to the planned segregation of the pupils in the public schools of the county but, on the contrary, in 1955 and subsequent years, resolved that the practices of enrollment and assignment of pupils for the ensuing year should be similar to those in use in the current year. If there were no remedy for such inaction, the federal court might well make use of its injunctive power to enjoin the violation of the constitutional rights of the plaintiffs but, as we have seen, the State statutes give to the parents of any child dissatisfied with the school to which he is assigned the right to make application for a

**14**

transfer and the right to be heard on the question by the Board. If after the hearing and final decision he is not satisfied, and can show that he has been discriminated against because of his race, he may then apply to the federal court for relief. In the pending case, however, that course was not taken, although it was clearly outlined in our two prior decisions, and the decision of the District Court in dismissing the case was therefore correct."

In view of the above, it is too well settled to admit of argument that the plaintiffs were required to exhaust their administrative remedies under the Assignment and Enrollment of Pupils Act before applying to this court for injunctive relief.

### IV.

WHETHER THE PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES UNDER THE NORTH CAROLINA ASSIGNMENT AND ENROLLMENT OF PUPILS ACT.

■ Before discussing this question, we need to remind ourselves again what the Supreme Court of the United States actually held in the Brown cases. As has been repeatedly stated, the Brown cases do not require integration, but only hold that states can no longer deny to anyone the right to attend a school of their choice on account of race or color. Briggs v. Elliott, D.C.E.D.S.C.1955, 132 F.Supp. 776; Thompson v. County School Board of Arlington County, D.C.E.D. Va.1956, 144 F.Supp. 239; School Board of City of Newport News, Va. v. Atkins, 4 Cir., 1957, 246 F.2d 325; Covington v. Edwards, D.C.M.D.N.C.1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780. Further, it should be borne in mind that if the Durham City Board of Education acted in an arbitrary and unreasonable manner, and there are some facts to support this contention, the plaintiffs are not left without a remedy. Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780.

With these legal principles in mind, we now turn to an examination of the legal theory upon which this action was instituted and the steps taken by the plaintiffs to exhaust their administrative remedies under the state statutes governing the enrollment and assignment of pupils in the public schools. A lengthy and detailed discussion of the requirements of the state statutes governing the enrollment and assignment of pupils in the public schools of North Carolina, and steps that must be taken in the exhaustion of administrative remedies under these statutes, can be found in Holt v. Raleigh City Board of Education, D.C. E.D.N.C.1958, 164 F.Supp. 853, 863, affirmed 4 Cir., 1959, 265 F.2d 95, and a further discussion of these requirements is unnecessary.

While there is a general allegation in the complaint that the plaintiffs "exhausted administrative remedy of appeal to the defendants," it is apparent that what the plaintiffs are really seeking is a general order requiring the desegregation of the Durham City Schools rather than seeking, as individuals, admission to any particular school. In their prayer for relief, plaintiffs seek an injunction against the enforcement of certain constitutional provisions and state statutes requiring or permitting the operation of a racially segregated school system in the City of Durham and elsewhere in the State of North Carolina, and request that the defendants be required to promptly present a plan of desegregation to the court which will expeditiously desegregate the Durham schools. Another significant factor is that the plaintiffs do not even now request a finding or conclusion that either of the plaintiffs has exhausted her administrative remedies under the state statutes dealing with the enrollment and assignment of pupils, but rather ask that the court find and conclude that the statute has been administered by these defendants in a discriminatory, arbitrary and unreasonable manner. Further, in their applications for reassignment, neither of the minor plaintiffs sought admission to any particular school, but only requested reassignment to a school nearest their residence

which was being operated on an integrated basis. Both minor plaintiffs stated they desired reassignment so that they could attend a school on a non-segregated basis. If the plaintiffs had any intention of even attempting a token compliance with the statutes dealing with the enrollment and assignment of pupils, it is inconceivable that they could not and did not list the school to which they desired reassignment, particularly in view of the fact that the application called for the name of the specific "school and grade to which assignment is requested." While the McKissick application gave the hour the applicant would have to leave home in the morning in order to attend the school to which assigned, it did not give the distance between the applicant's home and the school to which assigned, or the distance to any other school in the Durham City School system. The Richardson application gave no reason whatever as to why assignment was desired, other than to attend an integrated school, and gave no distance from the applicant's home to any school in the City of Durham. Further, there was no evidence offered at the trial as to where the Richardsons lived, the distance to any school from their home, or any other information as to why reassignment was sought. The plaintiffs were represented by several competent attorneys before the 1957–1958 assignments were made by the Durham City Board of Education and throughout the entire period they were seeking reassignment, and it must be assumed that the procedure followed was deliberately calculated to give rise to a class action rather than an action on behalf of the individual plaintiffs to gain reassignment to a particular school.

One other significant factor is that the plaintiffs, after being denied reassignment on the basis of their original application, and after requesting and being granted a *hearing* on their applications, elected not to appear at the hearing, either personally or through counsel. The court is at a loss to know what the plaintiffs had in mind by filing a paper designated as an "appeal" on the late afternoon of September 17, 1957, a few hours before the scheduled hearing before the board. No such procedure is prescribed by the Assignment and Enrollment of Pupils Act, and there is no legal basis for substituting an "appeal" for the hearing provided by the statute.

In the final analysis, the plaintiffs in this case are proceeding upon almost the identical theory, and upon almost the identical allegations and contentions, as did the plaintiffs in the Covington case. There it was held by the Court of Appeals for this circuit that the case was ruled by the prior decisions of that court in the Carson cases, and that the district court was correct in dismissing the action. Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780.

In view of the above, it is concluded that the plaintiffs failed, and indeed did not even attempt, to comply with the state statutes dealing with the enrollment and assignment of pupils, and are, therefore, not entitled to the relief sought. In deference to the plaintiffs, it should be pointed out that this case was actually tried before the pronouncements of the Court of Appeals in the Holt and Covington cases, but long after the holdings of this court in those cases and the holdings of the Court of Appeals in the Carson cases.

V.

WHETHER THE MINOR PLAINTIFFS, OR EITHER OF THEM, WERE REFUSED REASSIGNMENT ON ACCOUNT OF RACE OR COLOR.

Since the burden of proof was on the plaintiffs to establish by a preponderance of the evidence that they had exhausted their administrative remedies under state statutes before applying to the federal court for injunctive relief, and since they have failed to meet this burden, the court is not called upon to make a determination as to the reason the plaintiffs were denied reassignment. The failure of the plaintiffs to do their part under the applicable state statutes deprives the court of the opportunity of

reaching the merits of the case. However, the conclusions herein reached are not to be considered as my condoning deliberate practices on the part of school boards which result in the perpetuation of enforced segregation in public schools. The court heartily disapproves the method employed by the Durham City Board of Education in giving assignment notices, and particularly the delay in making assignments. Some of the resolutions adopted by the board regarding the applications of these plaintiffs strongly suggest that reassignments were denied solely because of the race and color of the applicants. A different conclusion could easily have been reached had the plaintiffs performed the simple duties imposed upon them by state law before applying to this court for relief. Utmost good faith is required on the part of public officials, and the court should never condone dilatory practices or schemes designed to deny any citizen of his constitutional rights. On the other hand, when simple but positive duties are imposed upon a citizen before seeking relief in the courts, he has the burden of establishing a good faith and adequate compliance with these duties before he will be heard to complain. Although it is not a part of the record in this case, it is heartening to know that many of the Durham City Schools were desegregated at the commencement of the 1959–1960 school year.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter herein.

2. The plaintiffs failed to exhaust their administrative remedies under the North Carolina Assignment and Enrollment of Pupils Act prior to the institution of this suit.

3. The plaintiffs are not entitled to the relief prayed for and the complaint should be dismissed.

However, in view of the fact that the plaintiff, Joycelyn McKissick, established at the trial that she lives less than 1½ miles from the Durham High School and more than 2½ miles from the Hill-side High School, and that other students living in the immediate vicinity of her home are assigned to the Durham High School, the court will defer the entry of a judgment in conformity with this opinion for a period of ten days to give this plaintiff an opportunity to file a written motion requesting that the case remain on the docket for the purpose of giving her an opportunity to adequately exhaust her administrative remedies. Since there was a total lack of proof on the part of the plaintiff, Elaine Richardson, as to her residence, distance of any school in the Durham School system from her home, and other relevant factors, she is not entitled to be accorded the same privilege.